# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# CIVIL CASE NO. 1:15-CV-00209-MR

| | |
|---|---|
| TENEYA DAWN MCCOY, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>NANCY A. BERRYHILL, Acting )<br>Commissioner of Social Security )<br>)<br>Defendant. )<br>) | **MEMORANDUM OF**<br>**DECISION AND ORDER** |

**THIS MATTER** is before the Court on the Plaintiff's Motion for Summary Judgment [Doc. 9], and the Defendant's Motion for Summary Judgment [Doc. 11].

## I.      PROCEDURAL BACKGROUND

On June 20, 2012, the Plaintiff, Teneya Dawn McCoy, filed applications for disability insurance benefits and supplemental security income payments, alleging an onset date of January 30, 2009. [Transcript "T." 275-299]. The Plaintiff's applications were denied initially and on reconsideration. [T. 192-209, 215-232]. Upon Plaintiff's request, a hearing was held on September 25, 2014, before an Administrative Law Judge ("ALJ"). [T. 53]. Present at the hearing were the Plaintiff; Jim Toms, who the ALJ identified as the

Plaintiff's attorney;[1] and a vocational expert ("VE"). [Id.]. At this hearing, the Plaintiff amended her alleged onset date to May 15, 2010, the day after the denial of an earlier claim. [T. 16]. On December 2, 2014, the ALJ issued a decision, wherein the ALJ concluded that the Plaintiff was not disabled. [T. 13-30]. On July 16, 2015, the Appeals Council denied the Plaintiff's request for review [T. 1-4], thereby making the ALJ's decision the final decision of the Commissioner. The Plaintiff has exhausted all available administrative

---

[1] According to the North Carolina State Bar, James H. Toms, Bar 5203, was disbarred on October 20, 1995, and his license remains in "Disbarred-Disciplinary" status. http://www.ncbar.gov/gxweb_if/wpViewMember.aspx?5203. Nonetheless, Mr. Toms did not correct the ALJ when the ALJ noted appearances by the "claimant and her *Attorney*, Mr. Toms . . . ." (T. 55) (emphasis added). Even more troubling, however, is Mr. Toms' recounting to the ALJ of an earlier conversation he had with the Plaintiff with respect to the Plaintiff's potential lawsuit against the manufacturer of her replacement hip.

> Her problem right now, as we saw it, is that she's just past three years, which is the North Carolina product liability statute of limitations, so for her to do anything with that, she's got to do it in a jurisdiction that has a longer limitation period, and there are some, so I've encouraged her to look at that. She has nothing to lose by trying.

[T. 59-60]. Although the correctness of Mr. Toms' conduct is beyond the scope of this Order, both he and any attorneys who utilize his services should carefully consider the following. In North Carolina it is a Class 1 misdemeanor for any person, "except active members of the Bar of the State of North Carolina admitted and licensed to practice as attorneys-at-law" to "advise upon or give opinion upon the legal rights of any person . . . ," or to "hold out himself, or themselves, as competent or qualified to give legal advice or counsel . . . ." N.C. Gen. Stat. § 84-2.1; N.C. Gen. Stat. § 84-4; N.C. Gen. Stat. § 84-8 (even though 20 C.F.R. § 404.1705 authorizes a claimant to appoint any person who is not an attorney to be their representative in dealing with the Administration). Similarly, the North Carolina Rules of Professional Conduct also prohibit the unauthorized practice of law, and impose a duty upon attorneys who hire nonlawyers to "make reasonable efforts to ensure that the nonlawyer's conduct is compatible with the professional obligations of the lawyer." Rule 5.3. A copy of this Order shall be sent to the North Carolina State Bar so that the Bar can determine whether these circumstances warrant further action.

remedies, and this case is now ripe for review pursuant to 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

The Court's review of a final decision of the Commissioner is limited to (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 401 (1971); and (2) whether the Commissioner applied the correct legal standards, Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). "When examining [a Social Security Administration] disability determination, a reviewing court is required to uphold the determination when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence." Bird v. Comm'r, 699 F.3d 337, 340 (4th Cir. 2012). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (internal quotation marks omitted). "It consists of more than a mere scintilla of evidence but may be less than a preponderance." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation marks omitted).

"In reviewing for substantial evidence, [the Court should] not undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the ALJ." Johnson, 434 F.3d at 653 (internal

quotation marks and alteration omitted). Rather, "[w]here conflicting evidence allows reasonable minds to differ," the Court defers to the ALJ's decision. Id. (internal quotation marks omitted). To enable judicial review for substantial evidence, "[t]he record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013).

## III. THE SEQUENTIAL EVALUATION PROCESS

A "disability" entitling a claimant to benefits under the Social Security Act, as relevant here, is "[the] inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (2012). The Social Security Administration Regulations set out a detailed five-step process for reviewing applications for disability. 20 C.F.R. §§ 404.1520, 416.920; Mascio v. Colvin, 780 F.3d 632, 634 (4th Cir. 2015). The burden is on the claimant to make the requisite showing at the first four steps. Id.

At step one, the ALJ determines whether the claimant is engaged in substantial gainful activity. If so, the claimant's application is denied

regardless of the medical condition, age, education, or work experience of the claimant. Id. If not, the case progresses to step two, where the claimant must show a severe impairment. If the claimant does not show any physical or mental deficiencies, or a combination thereof, which significantly limit the claimant's ability to perform work activities, then no severe impairment is established and the claimant is not disabled. Id.

At step three, the ALJ must determine whether one or more of the claimant's impairments meets or equals one of the listed impairments ("Listings") found at 20 C.F.R. 404, Appendix 1 to Subpart P. If so, the claimant is automatically deemed disabled regardless of age, education or work experience. Id. If not, before proceeding to step four, the ALJ must assess the claimant's residual functional capacity ("RFC"). The RFC is an administrative assessment of "the most" a claimant can still do on a "regular and continuing basis" notwithstanding the claimant's medically determinable impairments and the extent to which those impairments affect the claimant's ability to perform work-related functions. SSR 96-8p, 61 Fed. Reg. 34,474, 1996 WL 374184 (Jul. 2, 1996); 20 C.F.R. §§ 404.1546(c); 404.943(c); 416.945.

At step four, the claimant must show that his or her limitations prevent the claimant from performing his or her past work. 20 C.F.R. §§ 404.1520,

5

416.920; Mascio, 780 F.3d at 634. If the claimant can still perform his or her past work, then the claimant is not disabled. Id. Otherwise, the case progresses to the fifth step where the burden shifts to the Commissioner. At step five, the Commissioner must establish that, given the claimant's age, education, work experience, and RFC, the claimant can perform alternative work which exists in substantial numbers in the national economy. Id.; Hines v. Barnhart, 453 F.3d 559, 567 (4th Cir. 2006). "The Commissioner typically offers this evidence through the testimony of a vocational expert responding to a hypothetical that incorporates the claimant's limitations." 20 C.F.R. §§ 404.1520, 416.920; Mascio, 780 F.3d at 635. If the Commissioner succeeds in shouldering her burden at step five, the claimant is not disabled and the application for benefits must be denied. Id.

## IV. THE ALJ'S DECISION

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since her alleged onset date, May 15, 2010. [T. 18]. At step two, the ALJ found that the Plaintiff has severe medically determinable impairments including status post left total hip replacement with residual arthritis, degenerative disc disease of the lumbar spine, asthma, posttraumatic stress disorder, bipolar disorder, and personality disorder. [Id.]. At step three, the ALJ determined that the Plaintiff does not have an

impairment or combination of impairments that meets or medically equals the Listings. [Id. at 19]. The ALJ then determined that the that Plaintiff, notwithstanding her impairments, has the RFC:

> [T]o perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a)[2] except never balancing or climbing ladders/ropes/scaffolds; occasional climbing ramps/stairs, stooping, kneeling, crouching and crawling; avoid concentrated exposure to extreme cold/heat, vibration and dust/fumes/gases/etc,; limited to simple, routine, repetitive task; and only occasional interaction with the general public.

[T. 19-20].

At step four, the ALJ found that Plaintiff can no longer perform her past relevant work as a parts clerk, solderer, and sheetrock taper. [T. 23]. At step five, the ALJ determined that, in light of the Plaintiff's RFC, age, education and work experience, and based on the testimony of the VE, jobs exist in significant numbers in the national economy that the Plaintiff can perform. Accordingly, the ALJ concluded that Plaintiff is not disabled under the Act. [T. 23-24].

---

[2] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. 404.1567(a), 416.967(a).

7

## V. DISCUSSION[3]

It is uncontroverted that the Plaintiff's medically determinable mental impairments include PTSD, bipolar disorder, and personality disorder. It is also uncontroverted that these mental impairments could reasonably be expected to impose *some degree* of restriction upon the Plaintiff's activities of daily living, social functioning, and ability to maintain concentration, persistence or pace.

In his decision, the ALJ determined that the Plaintiff's mental impairments cause *mild* restrictions in activities of daily living; *moderate* difficulties in social functioning; *mild* difficulties maintaining concentration, persistence, or pace to perform *simple* tasks; and *moderate* difficulties maintaining concentration, persistence, or pace to perform *detailed* tasks. The ALJ then incorporated these restrictions in the Plaintiff's RFC as well as in his hypothetical to the VE. Specifically, the ALJ asked the VE whether jobs exist for a person with the Plaintiff's same age, education, work experience, who is also limited to simple, routine, repetitive tasks and only occasional interaction with the public. [T 75-76]. The VE responded that such a person could work as a final assembler, addresser, or charger II, all

---

[3] Rather than set forth a separate summary of the facts in this case, the Court has incorporated the relevant facts into its legal analysis.

jobs which exist in substantial numbers in the national economy. [T. 76]. Based upon this testimony by the VE, the ALJ concluded that the Plaintiff is not disabled under the Act.

The ALJ's determination as to the degree of the Plaintiff's restrictions, however, did not precisely coincide with the opinion of Dennis Hoogerman, Ph.D., a consultative psychologist who examined the Plaintiff on January 24, 2013, and whose opinion was most favorable to the Plaintiff's alleged degree of restrictions. [T. 78]. Thus, at the Plaintiff's request, the ALJ also asked the VE whether work exists for a person with Dr. Hoogerman's opinion of the Plaintiff's limitations. [T. 78].

> Okay, so Dr. Hoogerman has got a psychological evaluation, and he says moderately severely limited ability to understand, retain, and follow instructions and to help in defining moderately severely, he says out of one to five increasing limitation, five is apparently no ability whatsoever. One is mild or no limitation, I'm assuming, but he's got a four, so it's just a step below no ability. So, a four out of five for ability to understand, retain, and follow instructions, the same rating for ability to sustain attention and perform simple, repetitive tasks and then relating to others is a five. It's the worst limitation in terms of relating to others, other workers and supervisors, and then to tolerate stress, or ability to tolerate stress associated with day-today work activities is a four out of five. So, it's just a step below the worst possible limitation on his scale.

[Id.]. In response to this final hypothetical, the VE testified that an individual with these limitations "would not be able to perform competitive employment." [Id.].

9

In her Motion for Summary Judgment, the Plaintiff asserts, "[t]he fundamental error of ALJ Hess complained of in this brief is that he violated the standards for evaluation of the vocational witness testimony described in Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015)." [Doc. 10 at 11]. But the Plaintiff does not specify *how* the Mascio standard was violated or even *what* that standard is, nor does she offer any argument at all as to *why* she is entitled to the relief requested. In fact, Plaintiff's brief contains no discernible legal argument at all. Rather, the Plaintiff appears to have indiscriminately filled the pages of her brief with little more than a bare recitation of the evidence and a single unadorned citation to Mascio v. Colvin, as though she need only supply the raw materials of an argument and this Court will do the rest.[4] Lacking any particularized argument by the Plaintiff, this Court

---

[4] This Court is well acquainted with the significant number of remands resulting from Mascio v. Colvin, but the citation alone is not talismanic. As this Court has repeatedly instructed counsel for the Plaintiff, parties who seek remand must do more than merely utter citations to significant cases. See McClellan v. Astrue, Civil No. 1:12-CV-00255-MR-DLH, 2013 WL 5786839, at *3 (W.D.N.C. Oct. 28, 2013) (Howell, Mag. J.) (collecting cases and repeating the instruction to counsel for the Plaintiff that he must include citations to relevant legal authority, separately set forth each enumeration of error, and set forth legal analysis in his briefs setting forth how the cited authority supports his arguments).

Recently, this Court has been lenient in accepting briefs from counsel that failed to meet these minimum standards. See Cole v. Colvin, Civil No. 1:15-CV-00199-MR (noting that Plaintiff's brief is "not the model of clarity," but ultimately determining remand to be appropriate). Once again, however, this Court instructs counsel to separately set forth each alleged error, cite relevant legal authority, and include a discussion as to how the cited authority supports his arguments. Going forward, the Court will strike any briefs which do not conform to this minimum standard.

construes the Plaintiff's argument to be that the ALJ was obligated to accept Dr. Hoogerman's opinion of the Plaintiff's limitations, and consequently erred when he relied upon a hypothetical which did not incorporate those limitations.[5]

ALJs must evaluate every medical opinion they receive, considering, among other things, the nature of the author's relationship with the Plaintiff, including the frequency of treatment, length of treatment, and whether the author has examined the Plaintiff or only reviewed her records. 20 C.F.R. § 416.927(c). ALJs should also consider how well the author of an opinion supports that opinion with citations to relevant evidence, such as medical signs and laboratory findings. Id. Consistency with other opinions and the rest of the record is also relevant, as is any other factors or evidence which tends to support or contradict the opinion. Id. Consequently, if a treating physician's opinion is consistent with the other substantial evidence and well-supported, it should be given controlling weight. And "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if

---

[5] To the extent that Plaintiff attempts to weave various other legal arguments or errors into this assignment of error, the Court disregards those arguments, because the Court has repeatedly instructed counsel for the Plaintiff that each assignment of error must be separately set forth in his brief. McClellan v. Astrue, Civil No. 1:12-CV-00255-MR-DLH, 2013 WL 5786839, n. 2 (W.D.N.C. Oct. 28, 2013) (Howell, Mag. J.).

it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996).

In the instant case, the ALJ correctly considered Dr. Hoogerman's opinion that the Plaintiff suffered from moderate to severe mental limitations, and then explained why he gave that opinion no significant weight.

> I have given great weight to Dr. Conroy's opinion as it is consistent with the primary care physician's records showing no significant mental health problems. I have also considered Dr. Hoogerman's opinion that the claimant has moderate to severe limitations in her ability to understand, retain and follow instructions, sustain attention and perform simple repetitive tasks, relate to others, and tolerate the stress and pressures associated with day-to-day work activity. However, this opinion is not consistent with the evidence as a whole and seems to be based mostly on the claimant's subjective complaints. The claimant has never sought outpatient mental health treatment, she has never required emergency room treatment or inpatient hospitalization due to any psychiatric problems, and she takes no psychotropic medications. Her primary care physician has made absolutely no mention of any mental health problems and has specifically indicated on numerous occasions that her mood and affect are normal, as are her attention and concentration.

[T. 22-23] (citations omitted). The ALJ's discussion reveals that the ALJ did not simply "ignore" Dr. Hoogerman's opinion as the Plaintiff alleges. Rather, the ALJ applied the correct legal standard, reasoning that because the opinion was not well-supported and not consistent with the rest of the evidence, the opinion should not be given any significant weight. See Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996).

This decision is also supported by substantial evidence. Dr. Hoogerman's opinion of severe mental limitations stands in stark contrast to the opinions of *both* Dr. Conroy, [T. 849], and the Plaintiff's primary care physician, [see e.g., T. 1041], each of whom observed the Plaintiff's mental status as being relatively normal. Dr. Hoogerman's opinion is also inconsistent with the ALJ's observation of the Plaintiff as appearing "fine at the hearing," as well as the ALJ's findings that the Plaintiff has never sought outpatient mental health treatment, never required emergency room or inpatient hospitalization due to psychiatric problems, and takes no psychotropic medications. Furthermore, as noted by the ALJ, Dr. Hoogerman's opinion was not well-supported, but rather appeared to be based significantly upon the Plaintiff's own subjective complaints.

Because the ALJ applied the correct legal standard in evaluating Dr. Hoogerman's opinion, and substantial evidence supports the ALJ's decision not to give Dr. Hoogerman's opinion any significant weight, the ALJ did not err in declining to give that opinion any significant weight. See Mastro, 270 F.3d at 178. Consequently, to the extent that the Plaintiff argues that the ALJ's RFC and hypothetical to the VE inaccurately reflected her mental limitations because it failed to incorporate Dr. Hoogerman's opinion, that argument too must fail. Notably, apart from arguing for the adoption of Dr.

Hoogerman's opinion in its entirety, the Plaintiff has not identified any specific limitations which she contends were omitted erroneously.

Because this Court concludes that substantial evidence supports the ALJ's decision, and the ALJ applied the correct legal standards, the decision of the ALJ must be affirmed. See Richardson, 402 U.S. at 401; Hays, 907 F.2d at 1456.

**O R D E R**

**IT IS, THEREFORE, ORDERED** that the Plaintiff's Motion for Summary Judgment [Doc. 9] is **DENIED**, the Defendant's Motion for Summary Judgment [Doc. 11] is **GRANTED**, and the decision of the Commissioner is **AFFIRMED**. This action is hereby **DISMISSED**.

**IT IS SO ORDERED.**

Signed: March 8, 2017

Martin Reidinger
United States District Judge